S09A0393. DIVERSE POWER, INC. v. JACKSON et al.
(676 SE2d 204)

MELTON, Justice.

Pursuant to Georgia's State Purchasing Act (OCGA § 50-5-50 et seq.), on August 8, 2006, the Georgia Department of Technical and Adult Education (DTAE) sent a Request for Proposal to Diverse Power, Inc., Georgia Power Company, and the City of West Point, to solicit competitive bids for electrical services for a training center. All three responded with bids, and on October 18, 2006, DTAE notified Diverse Power that it had awarded the electrical services contract to

---

[4] Id.

[5] *Patterson v. State*, 280 Ga. 132, 135 (625 SE2d 395) (2006); *White v. State*, 269 Ga. 74, 75 (495 SE2d 278) (1998).

Georgia Power. Diverse Power, believing that it should have been awarded the contract over Georgia Power, notified DTAE on December 18, 2006 of its objection to the selection of Georgia Power. On December 27, 2006, DTAE informed Diverse Power that its objection to the award was untimely, because the objection did not comply with the requirements of the Department of Administrative Services' Georgia Vendor Manual (GVM). Specifically, the GVM required that a "protest by a bidder/offeror must be filed no later than ten (10) calendar days following the date of the Notice of Intent to Award." GVM § 3.8 (1) (b) (i). Roughly one month later, Diverse Power sued DTAE, Ronald W. Jackson (DTAE's Commissioner), and Georgia Power, seeking to enjoin performance of the contract with Georgia Power and to have the contract awarded to Diverse Power. On April 9, 2008, the trial court dismissed the action, reasoning in part that Diverse Power had failed to utilize the administrative remedies available to it before seeking its requested equitable relief.

Following the Court of Appeals' denial of Diverse Power's Application for Discretionary Appeal, this Court granted Diverse Power's Petition for Writ of Certiorari to determine whether the doctrine of exhaustion of administrative remedies is applicable to contracts awarded under the GVM and Georgia's State Purchasing Act. For the reasons that follow, we hold that the doctrine is applicable here, and that Diverse Power was therefore required to exhaust its administrative remedies before pursuing equitable relief. Accordingly, we affirm the trial court's dismissal of Diverse Power's claims.

Diverse Power argues that it was not required to exhaust its available administrative remedies because the Legislature did not include an express exhaustion requirement in the State Purchasing Act. However, the Legislature, through the State Purchasing Act, expressly gave the Department of Administrative Services the authority to "make all rules, regulations, and stipulations and to provide specifications to carry out the terms and provisions of [the State Purchasing Act] as may be necessary for the purposes of th[e Act]." OCGA § 50-5-54. See also *Dept. of Transp. v. Del-Cook Timber Co.*, 248 Ga. 734, 737 (3) (285 SE2d 913) (1982) ("it has long been recognized that the General Assembly is empowered to enact laws of general application and then delegate to administrative officers or agencies the authority to make rules and regulations necessary to effectuate such laws") (citations omitted). In this connection, the Legislature did not have to include an express exhaustion requirement in the State Purchasing Act, because the GVM itself sets forth the "rules, regulations, and stipulations," including mandatory protest procedures, that are necessary for carrying out the purposes of the Act. OCGA § 50-5-54. See also GVM § 3.8 ("This section

describes the mandatory administrative procedure ... whereby bidders/offerors may challenge contract awards"). One of the express purposes of the State Purchasing Act is "[t]o provide for timely, effective, and efficient service to using agencies and to vendors doing business with the state." OCGA § 50-5-50 (4). The GVM protest procedures help to fulfill this purpose by ensuring that any protests that might delay the implementation of contracts are handled expeditiously. See GVM § 3.8 (1) (b) (i) ("protest by a bidder/offeror must be filed no later than ten (10) calendar days following the date of the Notice of Intent to Award"). Moreover, the GVM makes clear that the protest procedures contained therein "describe[ ] mandatory administrative procedure[s]" (id.), further underscoring the importance of compliance with its terms to ensure the expeditious resolution of protests that could delay necessary services.

Where, as here, an authorized and available administrative remedy exists,

> [l]ong-standing Georgia law requires that a party aggrieved by a state agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision. As long as there is an effective and available administrative remedy, a party is required to pursue that remedy before seeking equitable relief in superior court.

(Footnotes omitted.) *Cerulean Cos., Inc. v. Tiller*, 271 Ga. 65, 66 (1) (516 SE2d 522) (1999). Because Diverse Power was required to utilize the available administrative procedure here before seeking equitable relief, but failed to do so, the trial court properly dismissed Diverse Power's claims.[1]

---

[1] Based on the facts of this case, we find no merit to Diverse Power's contention that the ten-day period within which a bidder must file an initial protest is unreasonable. Regardless of whether or not the ten-day protest period could be considered unreasonable under other circumstances, here, the record makes clear that there was nothing about the ten-day protest window that prevented Diverse Power from complying with it after being notified of the electrical services contract being awarded to Georgia Power. Contrary to Diverse Power's claims, it was not required to obtain more information regarding any alleged wrongdoing by the Department of Administrative Services before filing an initial protest to the award to Georgia Power. Indeed, the GVM contemplates that an aggrieved bidder may *not* have all of the information that he or she needs to challenge an award at the time of filing the initial protest, as an aggrieved bidder may later supplement their protest with "[s]upporting exhibits, evidence, or documents [that were] not available within the filing time." GVM § 3.8 (1) (b) (vii). By waiting two months before filing its initial protest, despite having no legitimate reason for failing to comply with the ten-day administrative filing requirement, Diverse Power ran the risk of "waiv[ing] with prejudice ... any grounds it may have [had] for a protest." Id. We decline to address whether the ten-day rule for filing an initial protest could be unreasonable

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 28, 2009.

*Sutherland, Asbill & Brennan, James A. Orr, William R. Wildman, Benjamin C. Morgan, Brian D. Burgoon*, for appellant.

*Thurbert E. Baker, Attorney General, William W. Banks, Jr., Senior Assistant Attorney General, Tiffany Y. Lucas, Assistant Attorney General, Troutman Sanders, William M. Droze, Robert P. Edwards, Jr., Jeffrey J. Hayward*, for appellee.

under facts different from those presented here.