S10A1217. FULTON COUNTY TAXPAYERS FOUNDATION, INC. et al. v. GEORGIA PUBLIC SERVICE COMMISSION et al.

(700 SE2d 554)

CARLEY, Presiding Justice.

On August 1, 2008, the Georgia Power Company filed an application with the Georgia Public Service Commission (PSC) to certify two new nuclear units at Plant Vogtle and to approve an updated Integrated Resource Plan. The application also sought approval by the PSC to allow costs from the "construction work in progress" of the new units to be included in Georgia Power's rate base in the form of a nuclear tariff starting in 2011. The PSC published public notice of the proceedings on the application several times in August and September 2008. Several public hearings on the application were held, after which an agreement between Georgia Power and the PSC was made except for the issue of the nuclear tariff. The PSC's Public Interest Advocacy Staff opposed the nuclear tariff and contended that the construction costs should be added to the rate base once the project was completed.

While the certification proceeding was pending, the General Assembly passed the Georgia Nuclear Energy Financing Act, codified

as OCGA § 46-2-25 (c.1), which amended OCGA § 46-2-25 to allow for the recovery of construction costs for nuclear power plants before completion of construction. Ga. L. 2009, pp. 39-40. After the passage of OCGA § 46-2-25 (c.1), the PSC issued the certification order on Georgia Power's application on March 30, 2009, which certified the proposed new units at Plant Vogtle and found that the nuclear tariff should be included in the rate base starting January 1, 2011. In allowing the nuclear tariff, the PSC stated that its inclusion was mandated by OCGA § 46-2-25 (c.1), but was also supported by the evidence submitted in the relevant proceedings.

On April 9, 2009, Appellants Fulton County Taxpayers Foundation, Inc., and John S. Sherman, who is a taxpayer and resident of Fulton County, submitted an application to intervene in the above proceedings, and the application was denied by the PSC on May 14, 2009 as untimely. On April 29, 2009, Appellants filed a petition for declaratory judgment challenging the constitutionality of OCGA § 46-2-25 (c.1), mandamus, and judicial review against the PSC and its members in their official capacities, as well as Sonny Perdue in his official capacity as Governor (Appellees). The trial court permitted Georgia Power to intervene, and Appellants amended their petition to request an injunction prohibiting Georgia Power from including the nuclear tariff in their rate base pursuant to OCGA § 46-2-25 (c.1). On August 21, 2009, Appellees filed a motion for summary judgment addressing standing issues as well as the merits of the petition. Appellants filed a response brief on standing issues on September 14, 2009, and a response to the State's motion for summary judgment on September 23, 2009. Oral argument before the trial court was heard on September 23, 2009. The trial court granted the motion for summary judgment filed by Appellees, holding that Appellants lack standing to petition for judicial review and to challenge the constitutionality of OCGA § 46-2-25 (c.1). The order also stated that the PSC's denial of Appellants' intervention application was reasonable. Finally, the order denied all remaining claims. Appellants appeal from that order.

1. Appellants contend that the trial court erred in granting the motion for summary judgment filed by Appellees without holding an oral hearing despite a timely request. Uniform Superior Court Rule 6.3 provides for oral argument on a motion for summary judgment if either party files a written, timely request. Our appellate courts have consistently held that once a party has filed a written request for oral argument of a summary judgment motion, the trial court is obligated to hold an oral hearing and the failure to do so cannot be harmless. *Body of Christ Overcoming Church of God v. Brinson*, 285 Ga. 613, 614 (680 SE2d 856) (2009); *Heartwood II v. Jones*, 296 Ga. App. 303, 304 (674 SE2d 365) (2009). There is no dispute that a timely

request for oral argument was filed by Appellants with the trial court.

However, oral argument was heard by the trial court in this case on September 23, 2009. The motion for summary judgment was filed by Appellees on August 21, 2009, which was more than 30 days prior to the date of the oral hearing as required by OCGA § 9-11-56 (c). The trial court, pursuant to its authority to "order a hearing on its own motion[,]" *Kelley v. First Franklin Financial Corp.*, 256 Ga. 622, 624 (351 SE2d 443) (1987), issued an order setting a hearing "on the issue of whether [Appellants] have standing to proceed on the Judicial Review, and whether Mandamus or a Declaratory Judgment action will lie under the circumstances." As the trial court did not rule on the merits of the constitutional challenges asserted by Appellants, all issues addressed by the trial court in its order granting summary judgment to Appellees fall within the issues specified in the trial court's notice of the oral hearing. In fact, Appellants do not allege that the trial court's notice was insufficient or that the trial court's order exceeded the scope of the notice. Therefore, any further oral hearing would essentially amount to a relitigation of the very issues that were heard at the hearing on September 23, 2009. The purpose of a summary judgment hearing "is to provide counsel with an opportunity to persuade the court and to provide the court with an opportunity to interrogate counsel. [Cits.]" *Kelley v. First Franklin Financial Corp.*, supra. Appellants had such an opportunity to persuade the trial court, and the trial court had such an opportunity to interrogate counsel on the dispositive issues in this case. Therefore, the trial court satisfied its obligation under Rule 6.3.

2. Appellants contend that the trial court erred in concluding that they lacked standing to seek judicial review of the PSC's certification order. OCGA § 50-13-19 (a) sets out two requirements before a person can seek judicial review of an agency action: a person must have "exhausted all administrative remedies available within the agency and [must be] aggrieved by a final decision in a contested case. . . ." Appellants have shown that they are aggrieved by the PSC's certification order because they are Georgia Power ratepayers and an increase in one's utility rates has previously been held to provide a person with the requisite aggrieved status. *Georgia Power Co. v. Campaign for a Prosperous Georgia*, 255 Ga. 253, 258 (2) (336 SE2d 790) (1985). However, Appellants must satisfy both prongs of OCGA § 50-13-19 (a) in order to establish standing to seek judicial review of the PSC's certification order.

This Court has consistently held that " '[a]s long as there is an effective and available administrative remedy, a party is required to pursue that remedy before seeking equitable relief in superior court.'

[Cit.]" *Diverse Power v. Jackson*, 285 Ga. 340, 342 (676 SE2d 204) (2009); *Cerulean Cos. v. Tiller*, 271 Ga. 65, 66 (1) (516 SE2d 522) (1999). Appellants had an available administrative remedy by applying for intervention status in the proceedings conducted by the PSC on Georgia Power's application for certification "within 30 days following the first published notice of the proceeding." OCGA § 46-2-59 (c). The PSC published notice of these proceedings in August and September 2008, and conducted three rounds of evidentiary hearings, including testimony from several third-party intervenors. It is undisputed that Appellants did not seek to intervene until April 9, 2009, eight months after notice of the proceedings was first published by the PSC, and, thus, their application to intervene was untimely and denied. Appellants attempt to circumvent this requirement by arguing that OCGA § 50-13-19 (a) provides standing for any "person" as opposed to any "party," as the two terms are defined separately in the Administrative Procedure Act. OCGA § 50-13-2 (4), (5). Therefore, Appellants argue, the filing of an application to intervene, even though denied because it was untimely, is the only action necessary to satisfy OCGA § 50-13-19 (a). However, the fact that OCGA § 50-13-19 (a) refers to a "person" does not negate its requirement that all administrative remedies be exhausted. In fact, Appellants' argument is in direct conflict with the language in OCGA § 50-13-19 (c) which states "that no objection to any order or decision of any agency shall be considered by the court upon petition for review unless such objection has been urged before the agency." Appellants' argument also conflicts with the following language in an opinion from this Court holding that a ratepayer who will pay higher rates is aggrieved for purposes of OCGA § 50-13-19 (a):

> We note that we do not anticipate that the holding we reach today will result in a flood of appeals of PSC rate decisions, since OCGA § 50-13-19 (a) limits the right to petition for review to persons "who have exhausted all administrative remedies available within the agency" in "contested cases," OCGA § 50-13-19 (a), and since the PSC has the authority to limit the number of intervenors before it and place conditions on the participation of those to whom it does grant the right to intervene. OCGA § 46-2-59 (c), (e), (f). Moreover, when persons who have been permitted to intervene, and who have established standing to seek judicial review, take an appeal to superior court, the review of the PSC decision is limited to the record. . . . [Cit.]

*Georgia Power Co. v. Campaign for a Prosperous Georgia*, supra. Therefore, in order to exhaust administrative remedies before the

PSC, a person must file a timely application for leave to intervene and participate in the certification proceedings. Since Appellants did not file a timely application to intervene, they have not satisfied the first requirement of OCGA § 50-13-19 (a). Therefore, the trial court properly concluded that Appellants lack standing to seek judicial review of the certification order.

3. Appellants also contend that the trial court erred by ruling on their appeal of the PSC's order denying their application for leave to intervene in the certification proceedings without holding a hearing. OCGA § 50-13-19 (g) provides that a "court, upon request, shall hear oral argument and receive written briefs." Appellants correctly note that this provision requires a trial court to hold a hearing on the denial of an application to intervene in an administrative proceeding if requested by a party. Nevertheless, Appellants were afforded such an oral hearing on September 23, 2009. A review of the transcript of this hearing establishes that Appellants were able to argue, and did in fact argue, why their application to intervene in the certification proceedings should not have been denied as untimely by the PSC. Appellants had an opportunity to argue the merits of this issue in front of the trial court, and, therefore, the trial court satisfied its obligation under OCGA § 50-13-19 (g).

4. Appellants contend that the trial court erred in denying permanent injunctive relief against Georgia Power in its order granting summary judgment to Appellees because the motion was not filed by Georgia Power. In its order, however, the trial court not only granted the summary judgment motion filed by Appellees but also entered judgment in favor of all defendants on all counts of Appellants' petition, including the claim for injunctive relief against Georgia Power. Furthermore, in *Georgia Public Svc. Comm. v. Southern Bell*, 254 Ga. 244, 246 (327 SE2d 726) (1985), this Court stated that an injunction is no longer an appropriate method for challenging an agency order after the passage of the Administrative Procedure Act, which provides a statutory right of review pursuant to OCGA § 50-13-19. A complaint in equity is not available if an "adequate remedy is provided at law." OCGA § 9-5-1. Therefore, the trial court properly denied injunctive relief against Georgia Power.

5. Appellants' final enumerations of error all challenge the constitutionality of OCGA § 46-2-25 (c.1). However, the trial court declined to reach the merits of the constitutional challenges, but merely ruled that Appellants lacked standing to raise them. Since this Court " 'will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point,' " the constitutional challenges cannot be considered on appeal. *Marks v. State*, 280 Ga. 70, 74-75 (4) (623 SE2d 504) (2005); *Vandiver v. Williams*, 218 Ga. 60, 61 (1) (126 SE2d 210) (1962).

Furthermore, Appellants have neither enumerated as error the ruling of the trial court that they lack standing to raise a constitutional challenge to OCGA § 46-2-25 (c.1) nor provided any argument or citation of authority with respect to that ruling. Accordingly, it was not made an issue in this appeal, and therefore will not be considered. *Marks v. State*, supra at 75 (4); *Mundy v. State*, 259 Ga. 634, 636 (8) (385 SE2d 666) (1989).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 4, 2010.

*Martenson, Hasbrouck & Simon, Robert D. Feagin, John F. Woodham*, for appellants.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Jr., Senior Assistant Attorney General, Alex F. Sponseller, Assistant Attorney General, Troutman Sanders, Kevin Greene, Jack E. Jirak*, for appellees.