In the Supreme Court of Georgia

Decided: February 4, 2019

S18A1425. GROGAN v. CITY OF DAWSONVILLE.

PETERSON, Justice.

The Dawsonville City Council voted to remove W. James Grogan as mayor in May 2017. Grogan sought review of the removal decision by filing a direct appeal and a petition for certiorari in the superior court. Grogan continued to serve as mayor pending the appeal, and the City then filed counterclaims against Grogan for attorneys' fees and for money had and received to recoup salary paid and other benefits provided to Grogan if the City prevailed before the superior court. Grogan moved to dismiss the City's counterclaims under the Anti-SLAPP statute, OCGA § 9-11-11.1. The superior court dismissed Grogan's appeal from the removal decision, found his certiorari petition was "procedurally defective," denied his motion to dismiss the City's counterclaims,

and granted partial summary judgment on the City's money-had-and-received counterclaim.[1]

On appeal before this Court, Grogan argues that he had the right to a direct appeal to the superior court and that his certiorari petition was not procedurally defective. Grogan also argues that the superior court erred in denying his motion to dismiss under the Anti-SLAPP statute because the City's counterclaims were filed to punish Grogan for exercising his constitutional rights to petition and free speech and the City did not establish a reasonable probability of success on the merits of those counterclaims. Grogan further argues that the court erred in granting relief to the City on its money-had-and-received counterclaim because it lacked subject matter jurisdiction over that claim and failed to apply the voluntary payment doctrine. The City argues that Grogan's claims are meritless and that we lack jurisdiction over this appeal because Grogan failed to file a discretionary application for appeal. We conclude that we do have jurisdiction over this appeal. We do not consider Grogan's challenges concerning the superior court's dismissal of his appeal and certiorari petition from the removal decision because those claims are now moot, and we conclude that the trial court

---

[1] The claim for attorneys' fees remains pending below.

2

erred in granting relief to the City on its money-had-and-received counterclaim. Therefore, we affirm in part and reverse in part.

1. *Background relevant to this appeal*

Following a May 15, 2017 hearing, at which the City's municipal court judge presided, the Dawsonville City Council voted to remove Grogan from his position as mayor. Grogan sought review first by filing a direct appeal against the City in the superior court on May 17, 2017, citing the procedural provisions of former Section 5.16 (1) of the Dawsonville Charter, and later by filing a petition for writ of certiorari on June 14, 2017. Grogan obtained a writ of certiorari but inadvertently omitted the writ from the package of documents he attempted to serve on the City by mail, and, when the City later declined to acknowledge service, Grogan personally served the City Manager and the municipal court judge who presided over his removal hearing. Grogan continued to work as mayor during the pendency of the appeal and received his salary and benefits.

The City filed an answer and counterclaimed for money had and received (to force Grogan to return the salary paid and the value of other benefits provided to Grogan during the pendency of the appeal should the City prevail)

3

and for attorneys' fees under OCGA § 13-6-11. The City also filed a motion to dismiss Grogan's appeal and to revoke the supersedeas bond. The City argued that Grogan's direct appeal should be dismissed because, although Grogan claimed he had a right to a direct appeal under former Section 5.16 (1) of the Dawsonville Charter,[2] the local ordinance was preempted by the certiorari procedures under OCGA § 5-4-1 and must give way to conflicting general law under the Uniformity Clause of the Georgia Constitution. See Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a). The City also argued that Grogan's writ of certiorari should be dismissed because he did not comply with the requirements of OCGA § 5-4-1 et seq.

The superior court granted the City's motion to dismiss Grogan's appeal to the superior court because he failed to comply with the statutory requirements for initiating an appeal. Specifically, the court found Grogan was required to seek review through a writ of certiorari, and rejected Grogan's position that the City Charter could validly create a right of direct appeal. The superior court also

---

[2] Former Section 5.16 (1) of the Dawsonville Charter provided that appeals from removal decisions by the City Council "shall be governed by the same rules as govern appeals to the superior court from the probate court." In December 2017, Section 5.16 (1) was amended to provide that such appeals are to proceed "by writ of certiorari in accordance with state law."

4

found that it lacked jurisdiction over Grogan's certiorari petition because he failed to properly name the City Council in the petition and failed to properly serve the members of the Council or the City itself. Grogan stopped working as mayor following the court's order.

The City later moved for partial summary judgment on its counterclaim for money had and received. Grogan filed a cross-motion for partial summary judgment and also a motion to dismiss the counterclaims pursuant to the Anti-SLAPP statute, arguing that the City's counterclaims were filed for the sole purpose of punishing him for the exercise of his right to appeal his removal from elected office — an act which he claimed was taken in furtherance of his First Amendment right to free speech and to petition on an issue of public interest.

The superior court denied Grogan's motion to dismiss, adopting the City's argument that the counterclaims stemmed from Grogan's invocation of supersedeas rather than his First Amendment rights and because the City had shown a likelihood that it would prevail on its counterclaims. The court also granted the City's motion for partial summary judgment and denied Grogan's on the money-had-and-received counterclaim.

Grogan filed a direct appeal to this Court. In his notice of appeal, Grogan states that he is appealing from the order denying his motion to dismiss and that he is also appealing other orders pursuant to OCGA § 5-6-34 (d), including the dismissal of his appeal and petition for certiorari before the superior court and the superior court's grant of partial summary judgment to the City.

2. *We have jurisdiction over this appeal.*

The City argues that we lack jurisdiction over Grogan's enumerations of error related to the dismissal of his appeal and certiorari petition from the removal action, arguing that Grogan was required to follow the discretionary appeal procedure under OCGA § 5-6-35 (a) (1) because he was appealing from the superior court's review of an administrative agency's adjudicatory decision. The City also argues that the case is not a final judgment because the superior court has not ruled on the City's counterclaim for attorneys' fees. The City misunderstands the interplay between our direct, interlocutory, and discretionary appeal statutes.[3]

---

[3] There is no dispute that we have subject matter jurisdiction over this case, because the City asserted that former Section 5.16 (1) of the City's charter was preempted by state statutes and thus violated the Uniformity Clause of the Georgia Constitution. See <u>City of Atlanta v. Mays</u>, 301 Ga. 367, 370 (1) n. 7 (801 SE2d 1) (2017) (concluding that the Court had jurisdiction over appeal involving a Uniformity Clause challenge, because it involved

Two code sections primarily govern the method for pursuing appeals to this Court and the Court of Appeals. The first, OCGA § 5-6-34, governs what trial court orders may be reviewed immediately by an appellate court. Specifically, subsection (a) of the statute lists the trial court judgments and orders that may be appealed immediately, while subsection (b) provides that for other orders a party must follow the interlocutory appeal procedure to obtain permission to seek appellate review. OCGA § 5-6-34 (a), (b). Once the trial court and then an appellate court grants a party permission to appeal an interlocutory order, the party must file a notice of appeal within a specified period to confer jurisdiction on the appellate court. See OCGA § 5-6-34 (b); see also Rollins v. Rollins, 300 Ga. 485, 489 (1) n.8 (796 SE2d 721) (2017) ("When an attempt is made to appeal an interlocutory order without following the statutory requirements of OCGA § 5-6-34 (b) for a certificate of immediate review from the trial court and an order from the appellate court expressly granting permission to appeal," a notice of appeal is unauthorized and

a constitutional question). The only jurisdictional question is whether this appeal is procedurally proper.

7

"ineffective to confer jurisdiction on the appellate court to hear the appeal."
(citation omitted)).

The second code section, OCGA § 5-6-35, governs the process by which a party must file an application for discretionary review for certain orders that are immediately appealable. The discretionary application procedure must be followed if the "underlying subject matter" is listed in OCGA § 5-6-35 (a), "even when the party is appealing a judgment or order that is procedurally subject to a direct appeal under OCGA § 5-6-34 (a)." Rebich v. Miles, 264 Ga. 467, 468 (448 SE2d 192) (1994). As relevant here, a discretionary application is required for "[a]ppeals from decisions of the superior courts reviewing decisions of . . . state and local administrative agencies." OCGA § 5-6-35 (a) (1). Because certain orders that are subject to immediate review may still require a discretionary application, we have repeatedly advised "litigants that they must review the discretionary application statute to see if it covers the underlying subject matter of the appeal." Schumacher v. City of Roswell, 301 Ga. 635, 636

(1) (803 SE2d 66) (2017). If the underlying subject matter is covered, the party must follow the discretionary appeal procedure of OCGA § 5-6-35. Id.[4]

Grogan was not required to follow the interlocutory review process. He filed a notice of appeal from the denial of his motion to dismiss based on OCGA § 9-11-11.1. He was entitled to an immediate appeal pursuant to OCGA § 5-6-34 (a) (13), which provides that a party may immediately appeal "[a]ll judgments or orders entered pursuant to Code Section 9-11-11.1." Because Grogan was entitled to appeal under subsection (a) of OCGA § 5-6-34, the fact that the trial court's order was not a final judgment — another kind of immediately appealable order listed in OCGA § 5-6-34 (a) — does not preclude our review. The interlocutory review procedure listed under OCGA § 5-6-34 (b) is required only when none of the immediate appeal provisions applies. See Southeastern Security Ins. Co. v. Empire Banking Co., 268 Ga. 450, 451 (490 SE2d 372) (1997) ("The interlocutory appeal procedure is applicable to those rulings which are not otherwise subject to [immediate] appeal.").

---

[4] We have often used the same term "direct appeal" to refer to two different concepts: (1) an immediate appeal for which permission is not required to be obtained through the interlocutory review process; and (2) an appeal that is entitled to come by a notice of appeal, not an application for discretionary review. These are not the same.

Grogan was also not required to seek an appeal by a discretionary application. Whether or not a stand-alone appeal from the superior court's dismissal of Grogan's appeal from the City's removal action would require an application for discretionary review as a decision "of the superior courts reviewing decisions of the . . . state and local administrative agencies," OCGA § 5-6-35 (a) (1), need not be resolved here. In his notice of appeal to this Court, Grogan stated that he was appealing from the denial of Grogan's motion to dismiss under the Anti-SLAPP statute, which alleged that the City filed the counterclaims to punish Grogan for exercising his constitutionally protected free speech and petition rights. In denying Grogan's motion to dismiss filed pursuant to OCGA § 9-11-11.1, the superior court was not reviewing the decision of an administrative agency. The counterclaim challenged by Grogan's motion to dismiss was not raised until Grogan appealed the City's removal action to the superior court. Rather than reviewing the City's action, the superior court's consideration of Grogan's motion to dismiss involved a determination of whether the City's counterclaim violated OCGA § 9-11-11.1. Nothing about Grogan's appeal from the denial of his motion to dismiss qualifies as an appeal from a decision of a superior court "reviewing decisions of the . . . state and

10

local administrative agencies." Compare <u>Ferguson v. Composite State Bd. of Med. Examiners</u>, 275 Ga. 255, 257-258 (2) (564 SE2d 715) (2002) (requiring discretionary application from appeal of denial of mandamus petition that seeks to attack or defend the validity of an administrative ruling). As a result, Grogan was not required to file a discretionary application to pursue his appeal to this Court. See <u>King v. City of Bainbridge</u>, 272 Ga. 427, 428 (1) (531 SE2d 350) (2000) ("Because the order appealed from in this case does not involve the review of the decision of a local administrative agency, we find the order is directly appealable under OCGA § 5-6-34 (a) [].").[5]

The fact that Grogan also challenged the order dismissing his appeal and petition for certiorari from the City's removal action as part of his direct appeal from the denial of his OCGA § 9-11-11.1 motion does not alter our conclusion. Under OCGA § 5-6-34 (d),

---

[5] This is not a case where Grogan filed the motion to dismiss as a collateral attack on the City's removal action, but was instead an attempt to challenge the City's counterclaims filed during the pendency of the appeal before the superior court. Compare <u>Hamryka v. City of Dawsonville</u>, 291 Ga. 124, 125 (2) (728 SE2d 197) (2012) (explaining that an appellant who obtains an adjudicative decision from a local administrative agency cannot circumvent the discretionary appeal process by bringing a collateral challenge to that decision in the superior court). Our ruling also does not conflict with established law that a party aggrieved by an agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking judicial review of the agency's decision. See <u>Diverse Power, Inc. v. Jackson</u>, 285 Ga. 340, 342 (676 SE2d 204) (2009).

11

[w]here an appeal is taken under any provision of subsection (a) . . . of this Code section, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere.

Construing this provision, we have held that, where an order would require a discretionary application to be appealed, such an application is unnecessary when the order is appealed with another order that may be appealed by a notice of appeal. See Martin v. Williams, 263 Ga. 707, 709 (3) (438 SE2d 353) (1994) (noting that this Court has "liberally applied § 5-6-34 (d) so as to permit an order that is not directly appealable by itself to be appealed along with a separate, directly appealable order" (collecting cases)); see also Haggard v. Board of Regents of Univ. System of Ga., 257 Ga. 524, 526 (4) (a) (360 SE2d 566) (1987) (not requiring an application for appeal from award of attorney fees under OCGA § 9-15-14 that was entered after judgment in the case because fee award was appealed as part of underlying judgment that was directly appealable). Thus, even if Grogan was required to file a discretionary application to appeal the superior court's order dismissing his appeal and

12

certiorari petition seeking review of the City's removal action, he was nevertheless permitted to challenge that ruling, as well as the grant of partial summary judgment to the City,[6] as part of his appeal challenging the denial of his Anti-SLAPP motion.

Perhaps recognizing that Grogan was not required to file a discretionary application for the appeal from the denial of his Anti-SLAPP motion, the City argues that we have jurisdiction over only enumerations of error concerning that motion, and do not have jurisdiction over his arguments regarding the dismissal of his appeal and certiorari petition. But we have jurisdiction over cases, not issues. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II ("The Supreme Court shall . . . exercise exclusive appellate jurisdiction in the following *cases . . .*") (emphasis added); id., Par. III ("[T]he Supreme Court shall have appellate

---

[6] The parties do not address whether Grogan's appeal from the superior court's grant of a partial summary judgment to the City on its counterclaim is sufficient to confer jurisdiction on this Court. See State v. Intl. Keystone Knights of the Ku Klux Klan, Inc., 299 Ga. 392, 397-408 (3)-(5) (788 SE2d 455) (2016) (after concluding that partial grant of summary judgment was immediately appealable, determining that the subject matter of the superior court's order was a review of a "decision" of a "state administrative agency" and, therefore, a discretionary application was required); Plantation Pipe Line Co. v. Strickland, 249 Ga. 829 (294 SE2d 471) (1982) (dismissing direct appeal of summary judgment upholding decision of a state administrative agency). In granting summary judgment to the City on its counterclaim, the superior court was not reviewing a decision of an administrative agency, as the counterclaim was not even filed    and could not have been    until after Grogan was removed from office by the City Council.

13

jurisdiction of the following classes of *cases . . .*") (emphasis added). And as described above, if, as here, an appeal is properly before us through the direct appeal procedures of OCGA § 5-6-34 (a), we may consider any previous ruling rendered in the case that is raised on appeal and which may affect the proceedings below. Therefore, we have jurisdiction in this case.

3. *Grogan's challenges to the superior court's dismissal of his appeal are moot.*

Notwithstanding our jurisdiction over this appeal, we cannot consider Grogan's challenges to the superior court's dismissal of his appeal and certiorari petition because his claims are moot.

> Consistent with its requirement that appellate courts address only those rulings that "may affect the proceedings below," OCGA § 5-6-34 (d) expressly provides that "[n]othing in this subsection shall require the appellate court to pass upon questions which are rendered moot." The general rule is that appellate courts do not consider moot questions.

In the Interest of I. S., 278 Ga. 859, 861 (607 SE2d 546) (2005). See also OCGA § 5-6-48 (b) (3) ("No appeal shall be dismissed or its validity affected for any cause nor shall consideration of any enumerated error be refused, except . . . [w]here the questions presented have become moot."). "The existence of an

14

actual controversy is fundamental to a decision on the merits by this court."

Cheeks v. Miller, 262 Ga. 687, 688 (425 SE2d 278) (1993) (citation omitted).

Grogan's challenges to the superior court's order dismissing his appeal and certiorari petition from the City's removal action are moot. Soon after the superior court dismissed Grogan's appeal and certiorari petition from the removal action, the City held a special election to fill the mayoral vacancy caused by Grogan's removal. Grogan confirms in his brief that he did not seek to enjoin the election while his appeal was pending; instead, he ran for re-election and lost. He also confirms in his brief that he did not contest the outcome of the special election and does not seek reinstatement to that position. Even if we were to conclude that the superior court erred in dismissing his appeal and certiorari petition and vacated that order, and even if the superior court were to conclude on remand that Grogan was improperly removed, there is no remedy that could now be afforded Grogan. "When the remedy sought in the trial court is no longer available, then the matter is moot and no longer subject to appeal." See Ga. Dept. of Nat. Res. v. Ctr. for a Sustainable Coast, Inc., 294 Ga. 593, 595 (1) (755 SE2d 184) (2014).

15

Grogan argues that his challenges are not moot because he is pursuing reversal of his removal for name-clearing purposes, and that without this opportunity, he may be subject to disqualification in future elections. Grogan's argument fails.

Grogan first cites Joiner v. Glenn, 288 Ga. 208 (702 SE2d 194) (2010), where we held that the appellant was entitled to a name-clearing hearing *after* he was terminated as the chief of police because the defendants refused to afford appellant his due process rights. Unlike the appellant in Joiner, who was afforded no due process prior to his removal, see id. at 209, Grogan was afforded an evidentiary hearing prior to the City's decision to remove him from office.

Grogan next cites OCGA § 21-2-8 to argue that he may be disqualified from seeking a political office in the future if he does not clear his name. That statute provides, in relevant part:

> No person shall be eligible for party nomination for or election to public office . . . if under the laws of this state, or any other state, or the United States he or she has been convicted and sentenced, in any court of competent jurisdiction, for fraudulent violation of primary or election laws, malfeasance in office, or felony involving moral turpitude, unless such person's civil rights have been restored and at least ten years have elapsed from the date of the completion

16

of the sentence without a subsequent conviction of another felony involving moral turpitude. Additionally, the person shall not be holding illegally any public funds.

OCGA § 21-2-8.

The statute plainly requires that a person (1) have been convicted and sentenced (2) in any court of competent jurisdiction for (3) certain enumerated offenses before he or she is disqualified from office. In this case, the ordinary meaning of the phrase "has been convicted and sentenced" as used in OCGA § 21-2-8 signifies an adjudication of a criminal offense. The term "convicted" means that someone has been found guilty of a criminal offense after proceedings in a court of law, and the term "sentenced" means "the judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer[.]" See Black's Law Dictionary 408, 1569 (10th ed. 2014). As Grogan points out, an adjudication that one has committed certain non-criminal wrongs may also on occasion be considered a "conviction." See Cole v. Holland, 219 Ga. 227, 229 (1) (132 SE2d 657) (1963). But one does not normally think of a person being "convicted and sentenced" when he or she receives a judgment in civil proceedings. Indeed, our case law reveals that when the phrase "conviction and sentence" is used, it is typically

used in criminal matters, signaling a guilty judgment on a criminal offense. See, e.g., Nazario v. State, 293 Ga. 480, 485-486 (2) (b) (746 SE2d 109) (2013) ("Since one may not be convicted legally of a crime which is included as a matter of law or fact in another crime for which the defendant stands convicted, the conviction and sentence for the included crime must be vacated by the appellate court, even if not enumerated as error."); Leverette v. State, 291 Ga. 834, 836 (4) (732 SE2d 255) (2012) ("A criminal defendant has no unqualified right to file a direct appeal from a judgment of conviction and sentence entered on a guilty plea." (citation and punctuation omitted)); O'Kelley v. State, 284 Ga. 758, 758 (670 SE2d 388) (2008) (following a murder trial, "[t]he trial court entered judgments of conviction and sentences in accordance with the jury's verdicts and recommendations").

Moreover, when the General Assembly enacted the precursor to OCGA § 21-2-8, it specifically enacted a statutory caption: "Section 34-107. Person convicted of *certain crimes* not to be eligible for nomination or election to public office or serve as primary or election official." Ga. L. 1964, Ex. Sess., p. 26, 33, § 1 (emphasis added). The codified caption here, unlike uncodified titles or preambles preceding other legislation, was part of the act enacted by the

18

General Assembly and is, therefore, appropriate to consider when determining the meaning of the statute. See Harrison v. McAfee, 338 Ga. App. 393, 399-400 (2) (b) & n.5 (788 SE2d 872) (2016) (codified language approved by the General Assembly, including codified preambles, is part of the act and may be considered in determining meaning of statute, while uncodified language may be consulted only if the statute is ambiguous).

Given the plain meaning of the text, including the codified statutory caption, and the context in which "convicted" and "sentenced," when paired together, are typically used, the meaning of OCGA § 21-2-8 requires a conviction and sentence for a criminal offense before someone is disqualified from office. Nothing about Grogan's removal shows that he was charged with, much less convicted of, a criminal offense. Compare OCGA § 45-11-4 (b), (c) (providing that a public officer may be charged for, among other things, misfeasance and malfeasance in office; a conviction shall be punished as a misdemeanor; and, upon a conviction, the accused shall be removed from office). Because Grogan was not "convicted and sentenced" of a criminal offense, he would not be barred by OCGA § 21-2-8 from holding political office

19

in the future. As a result, Grogan's challenges to the dismissal of his appeal and certiorari petition would provide him no remedy and are, therefore, moot.

4. *Regardless of whether the superior court should have granted Grogan's motion to dismiss the City's counterclaims, the court erred in granting relief to the City.*

Grogan makes various arguments that the superior court erred in denying his motion to dismiss under OCGA § 9-11-11.1. We need not address those arguments because the superior court erred in granting relief to the City on its counterclaim for money had and received.

> An action for money had and received is founded upon the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is maintainable in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it.

Sentinel Offender Svcs., LLC v. Glover, 296 Ga. 315, 331 (4) (a) (766 SE2d 456) (2014) (citation omitted).

Grogan argues, among other things, that the trial court erred in granting relief to the City on its money-had-and-received claim because, at a minimum, the are questions as to the equities involved, namely, who deserves to keep the money paid to Grogan. We conclude that the City was not entitled to the money as a matter of law.

20

The City does not dispute that through its counterclaim it was seeking to recoup money paid and the value of other benefits given to Grogan as he continued to serve as mayor during the pendency of his appeal and certiorari petition to the superior court.[7] The City does not allege that it was induced to pay Grogan due to some act of fraud or deceit by Grogan. Indeed, at oral argument, the City acknowledged that Grogan did in fact perform the duties of mayor during the time for which he was paid, and the City presents no authority that it can recover under such circumstances.

Moreover, Grogan was entitled to keep the money as a matter of law. This is not a case where Grogan unjustly enriched himself at the City's expense, as the City conceded that he served as mayor during the disputed period. It would be unfair to allow the City to have received the benefit of Grogan's services without paying for them, and it would certainly prejudice Grogan to refund the compensation he received for services rendered. See Time Ins. Co. v. Fulton-

---

[7] Of the approximately $25,000 the City claimed Grogan owed, about $10,700 was in salary paid to Grogan. The remaining amount of approximately $11,300 that the City sought to recoup was the value of health, disability, and dental insurance premiums paid for Grogan, a life insurance policy in Grogan's name, payroll taxes paid on Grogan's behalf, and amounts paid for certain business expenses. Outside of his salary, there is no indication that Grogan received money from the City. Grogan does not argue, and so we do not address, whether the City could ever recover only for money paid directly to the defendant.

DeKalb Hosp. Auth., 211 Ga. App. 34, 35-36 (1) (438 SE2d 149) (1993) (affirming dismissal of money-had-and-received claim where "[i]t [was] clear that [defendant] would be prejudiced by refunding the payment and that it in good conscience may retain payment for medical services rendered"). Accordingly, we reverse the grant of partial summary judgment to the City and the denial of partial summary judgment to Grogan on the City's counterclaim.

Judgment affirmed in part and reversed in part. All the Justices concur.