**THIRD DIVISION
DOYLE, P. J.,
DILLARD, P. J. and REESE, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 30, 2019**

# In the Court of Appeals of Georgia

A19A0991. AMAZING AMUSEMENTS GROUP, INC. v. DO-079
WILSON et al.

DOYLE, Presiding Judge.

Amazing Amusements Group, Inc. ("AAG"), appeals from an order of the Superior Court of Fulton County dismissing its petition for certiorari and/or statutory judicial review of an adverse decision by the Georgia Lottery Corporation ("GLC").[1] The superior court dismissed the petition on the ground that AAG failed to exhaust its administrative remedy before seeking judicial review. On appeal, AAG contends that the superior court erred because the controlling statute authorizes an appeal of

---

[1] Robert E. Wilson was named as the defendant in his official capacity as a hearing officer for the GLC. AAG sought appellate review pursuant to the certiorari procedure in OCGA § 5-4-1 et seq. as well as the statutory judicial review afforded by OCGA § 50-27-76.

"all actions of the [GLC]" to the superior court, so the administrative remedy exhaustion requirement does not apply. We disagree and affirm.

This case turns on statutory interpretation and resolution of questions of law, so we apply a de novo standard of review.[2]

The facts are not materially disputed. AAG held a master license issued by the GLC authorizing AAG to lease coin-operated amusement machines to licensed retail businesses.[3] In April 2016, the GLC issued a citation to AAG alleging certain violations of GLC rules. The citation notified AAG of a hearing date, AAG contested the citation, and an evidentiary hearing ensued before a hearing officer over three days with both parties present and represented by counsel. After considering all of the evidence from the hearing, the hearing officer entered a 27-page "Executive Order" listing his findings, analysis, and conclusions, ultimately revoking AAG's master license for 10 years, revoking any other business licenses, and fining AAG a total of $75,000.

---

[2] See *City of Sandy Springs Bd. of Appeals v. Traton Homes, LLC*, 341 Ga. App. 551, 552 (801 SE2d 599) (2017); *Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011).

[3] See OCGA § 50-27-70 (b) (10.1) (defining "master licensee").

AAG did not pursue an appeal of the hearing officer's decision available under GLC rules.[4] Instead, within 30 days, on December 19, 2016, AAG filed a petition in the Superior Court of Fulton County seeking a writ of certiorari under OCGA § 5-4-1 et seq. and judicial review under OCGA § 50-27-76 (a). The superior court sanctioned the petition and issued a writ of certiorari on December 20, 2016. The GLC made a limited appearance to move to dismiss the case, and following a hearing, the superior court granted the motion. The superior court reasoned that because AAG had not exhausted its administrative remedies, it could not seek judicial review in the superior court.[5]

---

[4] See GLC Rule 13.2.1. The GLC rules at issue appear to differ slightly from similar rules promulgated by the Georgia Department of Revenue and codified at Ca. Comp. R. & Regs. r. 560-2-19-.01 et seq. Compare *Ga. Lottery Corp. v. 1100 Shorter Dollar*, __ Ga. App. __ (Case No. A19A1298, decided August 22, 2019) (referencing Department of Revenue rules in dicta and not presented with the question before us in this case). The applicable GLC rules on which both parties rely have been made a part of the appellate record, and we refer to those rules as reproduced herein when necessary.

[5] See *Diverse Power, Inc. v. Jackson*, 285 Ga. 340, 342 (676 SE2d 204) (2009) ("[L]ong-standing Georgia law requires that a party aggrieved by a state agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision.") (punctuation omitted).

Following the denial of AAG's motion for reconsideration, AAG sought discretionary review in this Court, which was granted, giving rise to this appeal.

We begin by noting that our interpretation and application of statutory language is guided by the following principles:

> A statute draws its meaning, of course, from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.[6]

AAG's appellate argument relies on OCGA § 50-27-76 (a) which provides: "Appeal by an affected person from all actions of the [GLC] or chief executive officer shall be to the Superior Court of Fulton County. The review shall be conducted by the court and shall be confined to the record." Based on this language, AAG argues that

---

[6] (Citations and punctuation omitted.) *Ga. Lottery Corp. v. Tabletop Media, LLC*, 346 Ga. App. 498, 502 (2) (816 SE2d 438) (2018).

4

any and all actions by the GLC or its CEO are appealable to the superior court at any time, regardless of whether the decision was appealed at the agency level. In short, AAG argues, "all actions" should mean all actions in the most literal and broad sense — whether final, temporary, pending, or otherwise. Therefore, AAG argues that it did not have to engage in the agency appeal process required by GLC rules.

Those rules provide for the three-day evidentiary hearing before a hearing officer that took place in this case as well as a two-step appeal procedure:

RU 13.2.5 APPEAL PROCEDURE; POST-HEARING MOTIONS

(1) *The following two-step appeal procedure shall be the exclusive administrative remedy for appealing decisions entered pursuant to these rules.*

(a) Step One - Request for Reconsideration:

1. A licensee or applicant who is aggrieved by the Order entered by the Hearing Officer . . . may appeal by filing a Request for Reconsideration with the Hearing Officer no later than ten (10) days after receipt of the Order.

2. The Hearing Officer shall review the request and either deny the request or modify the initial Order by an Order on Reconsideration. . . .

(b) Step Two - Motion for Review:

1. (A) Provided a timely Request for Reconsideration was filed with the initial Hearing Officer . . . a licensee or applicant shall have ten (10) days from the date of receipt of the Hearing Officer's Order on Reconsideration (or denial of request), to file with the President/CEO a written Motion for Review by electronic mail to appeals@galottery.org. . . .

2. The motion shall set forth a concise statement of the basis upon which the appeal is made together with supporting arguments setting forth an enumeration of erroneous conclusions of law or determinations.

3. No evidence outside the record shall be considered.

4. After due consideration and as soon as practicable, the President/CEO or his/her designee shall either grant or deny the Motion for Review. For purposes of this Section, a Motion for Review shall be deemed denied if the President/CEO or his/her desginee fails to

provide a decision to either grant or deny the Motion of [sic] Review within 30 days from receipt of the Motion for Review.

5. If the Motion is granted, the President/CEO will either remand the case to the Hearing Officer for additional proceedings or issue a Final Order either modifying or upholding the Order.

6. Except in the case of a Final Order remanding the case, either the President/CEO's Final Order or the President/CEO's denial of a Motion for Review entered pursuant to this procedure shall constitute final GLC action and shall not be subject to further appeal within the GLC.

(2) Application to Stay Execution of Order: The filing of a Request for Reconsideration or Motion for Review does not, in and of itself, stay the execution and enforcement of any Order of the Hearing Officer or President/CEO.

(a) A request to stay the execution and enforcement of any Order may be made with the Request for Reconsideration or Motion for Review and the Hearing Officer or President/CEO may grant such request to stay upon appropriate terms for good cause shown.

7

(3) Waiver of Administrative Appeal: *A party must follow the intra-agency appeal procedure as outlined in the Rule. The failure of a party to follow such appeal procedure shall constitute a waiver of its appeal rights.*[7]

As made clear by the emphasized language above, GLC rules require that affected persons must exhaust the intra-agency appeal procedure, and the failure to do so operates as a waiver of the person's appeal rights. AAG argues that this conflicts with the statutory directive that appeals from "all actions" of the GLC "shall be to the Superior Court of Fulton County," so the rules must yield to the statutory language.[8]

But the phrase "all actions" is not defined, and it appears in a sentence primarily directed toward identifying *where* an affected person may pursue an appeal — the Code section does not address the type of GLC action or the underlying GLC decision process. It does, however, refer to decisions made by "the corporation" and

---

[7] (Emphasis supplied.) GLC Rule 13.2.5.

[8] See, e.g., *Ga. Dept. of Community Health v. Dillard*, 313 Ga. App. 782, 785, (1) (723 SE2d 23) (2012) ("[A]n administrative rule which exceeds the scope of or is inconsistent with the authority of the statute upon which it is predicated is invalid.") (punctuation omitted).

"the chief executive officer,"[9] who would normally be the final agency decision maker, and it omits any reference to a "hearing officer" such as the one who rendered the decision that AAG challenges here. Therefore,

> [w]here, as here, the term ["all actions"] is undefined[,] and its plain meaning is not made clear from the language in OCGA § [50-27-76] itself, . . . we must presume that the statute was enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. It is therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and its meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.[10]

Put another way, it is self-evident that OCGA § 50-27-76 was not codified in a vacuum but as part of a greater statutory scheme applicable to GLC decision making.[11] Part of that scheme is codified in OCGA § 50-27-74 (a), which provides

---

[9] See OCGA § 50-27-76 (b).

[10] (Citations and punctuation omitted.) *City of Atlanta*, 292 Ga. at 744.

[11] See generally *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) ("[T]he golden rule of statutory construction requires us to follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to ensure that the legislature meant something else.") (punctuation omitted); *City of Atlanta v. City of College Park*, 292 Ga. 741, 744 (741 SE2d 147) (2013) (statutes are to be read in context). See also OCGA § 1-3-1.

that affected persons are only entitled to challenge certain GLC actions through the initial administrative hearing in certain cases: license refusal, license revocation, and certain (but not all) sanctions.[12] This statutory language demonstrates that the administrative challenge initiated by AAG here is one of a limited scope of GLC "actions" specified by the legislature that are subject to administrative challenge. Reading OCGA § 50-27-76 in the manner AAG urges would render meaningless the statutory context codified in OCGA § 50-27-74 (a), and we must avoid such constructions.[13]

Also as part of the statutory context, the General Assembly in OCGA § 50-27-74 (c) gave the GLC authority to create its own intra-agency appeal process applicable to those administrative challenges:

> Subject to approval by the chief executive officer and corporation, the Bona Fide Coin Operated Amusement Machine Operator Advisory Board *shall establish a procedure for hearings required by this article*.

---

[12] For example, according to OCGA § 50-27-74 (a) (3) (C), when the GLC seals a machine license to prevent its use under a revoked license (per OCGA § 50-27-82 (f)), the sealing is not subject to challenge through the hearing process established in OCGA § 50-27-74 (a).

[13] See generally *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 190 (587 SE2d 24) (2003) (explaining that, when interpreting a statute, a court must avoid "a construction that makes some language mere surplusage").

10

*Such procedure shall empower the chief executive officer* with the authority to delegate or appoint any person or public agency to preside over the hearing *and adjudicate the appeal*, and the chief executive officer shall identify the party responsible for entering a final decision for the corporation.[14]

Thus, the legislature authorized the GLC to establish the very intra-agency appeal process AAG now seeks to avoid, and the statute creates this authority without limitation as to the exclusivity of the administrative remedy.

Georgia courts have

long . . . recognized that the General Assembly is empowered to enact laws of general application and then delegate to administrative officers or agencies the authority to make rules and regulations necessary to effectuate such laws. In this connection, the [l]egislature did not have to include an express exhaustion requirement in [OCGA § 50-27-76], because [under OCGA § 50-27-74 (c), GLC has the power to approve hearing and appeal procedures, including an exhaustion requirement.][15]

Accordingly, the phrase "all actions" must be read in harmony with the statutory provisions that authorize parties to challenge GLC actions and the statutory provisions that authorize the GLC to establish an appeal process for those

_____

[14] (Emphasis added.)

[15] (Punctuation omitted.) *Diverse Power, Inc.*, 285 Ga. at 341.

11

challenges.[16] In effect, OCGA § 50-27-76 (a) does not define "all actions" because OCGA § 50-27-74 (c) gives the GLC the authority to establish how its decisions are contested and appealed. AAG's argument ignores this fundamental statutory scheme.

Moreover, reading OCGA § 50-27-76 (a) in harmony with its context follows

long-standing Georgia law [that] requires that a party aggrieved by a state agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision. As long as there is an effective and available administrative remedy, a party is required to pursue that remedy before seeking equitable relief in superior court.[17]

---

[16] See, e.g., *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) ("[T]he golden rule of statutory construction requires us to follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to ensure that the legislature meant something else.") (punctuation omitted); *City of Atlanta v. City of College Park*, 292 Ga. 741, 744 (741 SE2d 147) (2013) (statutes are to be read in context). See also OCGA § 1-3-1.

[17] (Punctuation omitted.) *Diverse Power, Inc.*, 285 Ga. at 342. See also *Ga. Dept. of Behavioral Health & Developmental Disabilities v. United Cerebral Palsy of Ga., Inc.*, 298 Ga. 779, 787 (2) (a) (784 SE2d 781) (2016) ("[T]he rationale for requiring exhaustion of administrative remedies is that resort to the administrative process will permit the agency to apply its expertise, protect the agency's autonomy, allow a more efficient resolution, and result in the uniform application of matters within the agency's jurisdiction. . . . [O]nly in rare instances will the requirement of exhaustion be relaxed.") (citation and punctuation omitted).

AAG argues that the remedy afforded by GLC's rules is not an effective or reasonable remedy[18] because it does not provide for an automatic stay of enforcement as a matter of right and because the allegedly indeterminate time frame would frustrate its right to appeal under the 30-day deadline for certiorari in OCGA § 5-4-6 (a). But that deadline provides that even if the intra-agency appeal process takes more than 30 days from the initial decision,[19] the affected person would still have 30 days from the GLC's "final determination" to appeal to the superior court. Thus, GLC's rules do not frustrate parties' right to appeal to the superior court.

Likewise, with respect to a stay of enforcement, GLC rules allow a person to request a stay for good cause at either the first or second stage of review.[20] This

---

[18] See, e.g., *Dillard*, 313 Ga. App. at 785 (1) ("The test of the validity of an administrative [procedure] rule is twofold: whether it is authorized by statute and whether it is reasonable.") (punctuation omitted).

[19] The GLC Rules do not provide a strict time frame for a ruling on a motion for reconsideration (the first step), but they do provide that such a ruling will be deemed affirmed by operation of law (and therefore final) if the CEO or his/her designee does not issue a decision on a motion for review (the second step) within 30 days of receipt of the motion for review. See GLC Rule 13.2.5 (1) (a) (2) & (1) (b) (4).

[20] See GLC Rule 13.2.5 (2) (a), supra.

mirrors similar language codified in Georgia's Administrative Procedure Act ("APA"),[21] which has been held to be an effective and available agency-level remedy.[22] Accordingly, the GLC rules are not fatally ineffective such that they are unreasonable or unauthorized by statute.

In sum, because AAG failed to exhaust the required administrative remedy available to it, the superior court properly dismissed its petition for review.[23]

*Judgment affirmed. Dillard, P. J. and Reese, J., concur.*

---

[21] OCGA § 50-13-19 (d) (1).

[22] See, e.g., *Ga. Dept. of Community Health v. Ga. Society of Ambulatory Surgery Centers*, 290 Ga. 628, 629-630 (1) (724 SE2d 386) (2012) (finding no futility in the remedy provided by Georgia's APA); *Ga. Public Svc. Comm. v. Southern Bell*, 254 Ga. 244, 247-248 (327 SE2d 726) (1985) ("Reviewing the appeal procedure in OCGA § 50-13-19[,] we cannot say it fails to provide an adequate remedy for [the challenging party] in this case. The harm alleged is the harm which exists in every appeal of [similar cases], that is that in cases where the court orders a reversal or modification which will [grant relief], the [appealing party] has lost revenue in the interim."). We note that the APA does not control this case, see OCGA § 50-27-9 (a) (3) (exempting the GLC from the requirements of the Georgia APA), but the acceptance of its remedy in the case law is instructive here.

[23] See *Alexander v. Dept. of Revenue*, 316 Ga. App. 543, 544-545 (728 SE2d 320) (2012) (failure to exhaust required administrative remedy was fatal to appeal in superior court, even after the unappealed initial decision became final by operation of law); *Diverse Power, Inc.*, 285 Ga. at 342.