**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 4, 2019**

# In the Court of Appeals of Georgia

A19A1916. ANDREWS v. BLUE RIDGE NH ASSOCIATES, LLC et al.

BARNES, Presiding Judge.

Donna Andrews, as the Administrator of the Estate of Johnny Lee Fleak (the "decedent"), brought this negligence, premises liability, and wrongful death action against Chatsworth HCC, LLC d/b/a Chatsworth Health Care Center, Inc. ("Chatsworth HC"), Chatsworth Health Care Limited Partnership ("Chatsworth LP"), Blue Ridge Health Care, LLC ("Blue Ridge HC"), Blue Ridge NH Associates, LLC ("Blue Ridge Associates"),[1] HLTC, Inc., and several John Doe defendants. The trial court subsequently entered an order granting three motions filed by the defendants: Chatsworth LP and Blue Ridge HC's motion to dismiss them as improper parties; the

---

[1] Chatsworth HC, Chatsworth LP, Blue Ridge HC, and Blue Ridge Associates will be referred to collectively as the "Chatsworth-Blue Ridge Defendants."

Chatsworth-Blue Ridge Defendants' motion to dismiss for improper venue, or alternatively, to transfer based on the doctrine of forum non conveniens; and HLTC's motion to transfer based on the doctrine of forum non conveniens. Andrews now appeals these rulings. For the reasons discussed below, we vacate in part, reverse in part, and remand for further proceedings consistent with this opinion.

The record reflects that the decedent received care and treatment at two nursing home facilities pertinent to this appeal, Chatsworth Health Care Center in Murray County and Regency Park Health and Rehabilitation in Whitfield County. According to the plaintiff's complaint, the decedent was dependent on staff and mechanical lifts for transfers on and off of his bed because he was paralyzed in his left extremities. The complaint alleged that on July 24, 2015, the nursing staff at Chatsworth Health Care Center improperly operated a mechanical lift and dropped the decedent while returning him to bed, causing him to suffer a fractured left leg and hip. The complaint further alleged that the decedent later was admitted to Regency Park Health and Rehabilitation, but the staff failed to monitor him for pressure sores, and he developed a decubitus ulcer in the left hip and buttocks area.

Following the decedent's death from complications alleged to have arisen from his injuries, Andrews, as the administrator of his estate, brought the present lawsuit

2

on March 14, 2018, in the State Court of DeKalb County. The complaint alleged that the Chatsworth-Blue Ridge Defendants owned, operated, and/or managed Chatsworth Health Care Center and that HLTC managed Regency Park Health and Rehabilitation. The complaint also alleged that the defendants were responsible for the negligent acts of their agents and employees at those nursing home facilities, and that the Chatsworth-Blue Ridge Defendants failed to keep the premises safe for residents and invitees of Chatsworth Health Care Center such as the decedent. The complaint asserted multiple claims against the defendants, including claims for professional and ordinary negligence, premises liability, violations of the Omnibus Budget Reconciliation Act, negligent hiring, training, and supervision, and wrongful death.

Venue in DeKalb County was founded upon the residence of Blue Ridge HC and Blue Ridge Associates based on the location of the registered office that they maintained in that county. Both companies were served at the registered office.

The defendants filed their respective answers, denying liability.[2] The defendants also filed several motions, including: Chatsworth LP and Blue Ridge HC's Motion to Dismiss Improper Parties; the Chatsworth-Blue Ridge Defendants' Motion to Dismiss for Improper Venue, or Alternatively To Transfer Forum Non Conveniens;

---

[2] Chatsworth LP and Blue Ridge HC filed answers by special appearance.

3

and HLTC's Motion for Forum Non Conveniens Transfer.[3] Additionally, HLTC thereafter filed a motion seeking to stay all discovery.

Following a hearing in which the parties presented oral argument and the trial court stayed all further discovery, the trial court entered an order granting the defendants' motions in March 2019 (the "March 2019 Order").[4] First, the trial court ruled that Chatsworth LP and Blue Ridge HC should be dismissed as improper parties (a) based on affidavits and other documents that those two companies filed reflecting that they never owned, operated, or managed either of the nursing home facilities where the decedent allegedly was injured and (b) based on an alleged admission made by plaintiff's counsel at the hearing that the two companies would be dismissed from the case. Second, the trial court ruled that venue in DeKalb County could not be predicated on the residency of Blue Ridge Associates because that company's registered office changed from DeKalb County to Dawson County as of February 27,

---

[3] Several other motions filed by the defendants were not adjudicated by the trial court in light of its decision to transfer the case to Whitfield County. The trial court ruled that those motions should be decided by the court to which the case was transferred.

[4] The trial court entered its original order on March 4, 2019, but the court entered an amended order on March 6, 2019, reflecting that the defendant companies had agreed that if the case was transferred to another county, it should be to Whitfield County rather than Murray County.

2018, before Andrews filed her complaint. Third, the trial court ruled that venue should be transferred from the State Court of DeKalb County to the Superior Court of Whitfield County based on the doctrine of forum non conveniens.

1. We first address the threshold jurisdictional question of whether Andrews was required to follow this Court's interlocutory appeal procedures to obtain appellate review.[5] We answer that question in the negative because the trial court's March 2019 Order was directly appealable under OCGA § 9-11-56 (h).

OCGA § 5-6-34 (b) governs the method for pursuing appeals of interlocutory orders. See *Grogan v. City of Dawsonville*, 305 Ga. 79, 82 (2) (823 SE2d 763) (2019). Under that statutory subsection, a party seeking to appeal must first obtain a certificate of review from the trial court and then must obtain permission from the appellate court to pursue the appeal. See id. "Once the trial court and then an appellate court grant a party permission to appeal an interlocutory order, the party must file a notice of appeal within a specified period to confer jurisdiction on the

---

[5]Andrews filed a direct appeal to this Court from the trial court's March 2019 Order. We originally dismissed the appeal in an unpublished order for failure to comply with this Court's interlocutory appeal procedures, but we subsequently reinstated the appeal, with the caveat that the jurisdictional question could be revisited after full briefing in the case. See generally *Wolfe v. Regents of the Univ. System of Ga.*, 300 Ga. 223, 226 (1) (794 SE2d 85) (2016) (revisiting jurisdictional question in published opinion after appeal was reinstated).

5

appellate court." Id. "The failure to follow the interlocutory appeal requirements, when applicable, generally deprives this Court of jurisdiction." *Eidson v. Croutch*, 337 Ga. App. 542, 543 (788 SE2d 129) (2016).

In its March 2019 Order, the trial court transferred venue of the case to a different county, and a trial court's ruling to transfer venue is considered interlocutory in nature and is subject to the procedures governing interlocutory appeals. *Mauer v. Parker Fibernet*, 306 Ga. App. 160, 161 (701 SE2d 599) (2010). Consequently, Andrews was required to follow the interlocutory appeal procedures unless there was another statutory basis for filing a direct appeal.

Andrews argues that a direct appeal of the March 2019 Order was authorized based on OCGA § 9-11-56 (h),[6] which allows for the direct appeal of a trial court's partial grant of summary judgment. Andrews notes that in the March 2019 Order, in addition to transferring venue, the trial court granted Chatsworth LP and Blue Ridge HC's Motion to Dismiss Improper Parties, and she contends that the motion was in substance and effect a motion for summary judgment and that the trial court's ruling

---

[6] OCGA § 9-11-56 (h) provides:
> An order granting summary judgment on any issue or as to any party shall be subject to review by appeal. An order denying summary judgment shall be subject to review by direct appeal in accordance with subsection (b) of Code Section 5-6-34.

on the motion should be viewed as the grant of summary judgment to those two parties. Consequently, because the grant of summary judgment "on any issue or as to any party" is directly appealable under OCGA § 9-11-56 (h), Andrews maintains that she had the right to directly appeal the trial court's grant of the Motion to Dismiss Improper Parties. And, because "when a direct appeal is taken, any other judgments, rulings or orders rendered in the case and which may affect the proceedings below may be raised on appeal and reviewed and determined by the appellate court,"[7] Andrews argues that it also was within her right to appeal the trial court's venue-related rulings contained in the March 2019 Order. We agree with Andrews.

In their brief filed in support of their Motion to Dismiss Improper Parties filed in the court below, Chatsworth LP and Blue Ridge HC noted that the complaint alleged that they managed Chatsworth Health Care Center during the time that the decedent suffered his injuries, but they asserted that those "allegations [were] factually inaccurate," that neither company "has ever operated, controlled, or otherwise managed[ ] Chatsworth Health Care Center," and that they "lack[ed] . . . involvement with the allegations at issue." Chatsworth LP asserted that it was a land

---

[7] *Southeast Ceramics v. Klem*, 246 Ga. 294, 295 (1) (271 SE2d 199) (1980). See OCGA § 5-6-34 (d).

7

holding company, and both companies contended that the operating agreement for Chatsworth Health Care Center reflected that they were not involved in the ownership, operation, or management of that nursing home facility. In support of their assertions, Chatsworth LP and Blue Ridge HC each submitted an affidavit from Dana Karschner, who was the general partner and general counsel for Chatsworth LP and the managing member and general counsel for Blue Ridge HC. Karschner averred that during the time period in question, Chatsworth LP did not operate a skilled nursing home facility in Murray County, did not employ anyone at such a facility, and "was not in charge of daily maintenance, repairs, or any other aspect evidencing control or operation of [such] a . . . facility." Karschner similarly averred that during the pertinent time period, Blue Ridge HC did not own, operate, or control a skilled nursing home facility in Murray County, did not employ anyone there, and was not in charge of maintenance or repairs. Karschner further averred that Blue Ridge HC was formed as a company after the events at issue in this case and was administratively dissolved as a business entity in 2017, without ever having transacted any business in Georgia. Records purportedly from the Corporate Division of the Secretary of State of Georgia for Blue Ridge HC also were included as exhibits to the Motion to Dismiss Improper Parties. Based on the affidavits and exhibits,

8

Chatsworth LP and Blue Ridge HC requested that the trial court dismiss them from the case with prejudice.

In granting the Motion to Dismiss Improper Parties, the trial court found that Chatsworth LP had "successfully show[n] the Court that it is merely a land holding company that never owned, operated, or managed a skilled nursing facility," and that Blue Ridge HC had "successfully show[n] that it was first formed as a business entity in 2016, after the events at issue in this case, never owned, operated, or managed a skilled nursing facility at any time, and was administratively dissolved as a business entity in 2017." In support of its findings, the trial court relied on the affidavits submitted in connection with the motion "attesting to these facts regarding Defendants Chatsworth LP and Blue Ridge HC."

We conclude that the trial court effectively awarded summary judgment to Chatsworth LP and Blue Ridge HC when it granted their Motion to Dismiss Improper Parties. "A summary judgment is a judgment on the merits of the underlying claims or defenses." *First Christ Holiness Church v. Owens Temple First Christ Holiness Church*, 282 Ga. 883, 885 (655 SE2d 605) (2008). See *Ogden Equip. Co. v. Talmadge Farms*, 232 Ga. 614, 614 (208 SE2d 459) (1974) (noting that "a motion for summary

judgment is designed to test the merits of the claim") (citations and punctuation omitted). The trial court concluded that Chatsworth LP and Blue Ridge HC should be dismissed from the case based on those defendants' evidentiary submissions that they did not own, operate, control, or manage the pertinent nursing home facilities. Such a conclusion constituted a ruling on the merits of Andrews's claims, including her premises liability claim. See *Whatley's Interiors v. Anderson*, 176 Ga. App. 406, 407 (3) (336 SE2d 326) (1985) (ruling that defendant "had no interest in the subject property" was a ruling "on the merits of the claim" and "should . . . have been treated as a grant of summary judgment rather than a dismissal"). See generally *Anderson v. Atlanta Committee for Olympic Games*, 273 Ga. 113, 118 (5) (537 SE2d 345) (2000) (summary judgment properly granted to defendant on plaintiffs' premises liability claim where defendant did not own or occupy the property where the plaintiffs were injured); *Dixon v. Infinity Broadcasting East*, 289 Ga. App. 71, 72 (1) (656 SE2d 211) (2007) (affirming summary judgment to defendant, where evidence showed that defendant had no contractual responsibility for the condition of the premises where the injury occurred and thus owed no duty to the plaintiff); *Holiday Inns v. Newton*, 157 Ga. App. 436, 436 (278 SE2d 85) (1981) (summary judgment should have been granted to defendant where unrebutted evidence showed "that it was not an owner or

10

in control of the premises and that it had no control of the owner-operator of the premises or any of its agents or employees"). Because the trial court's determination that Chatsworth LP and Blue Ridge HC did not own, operate, control, or manage the facilities "terminated, rather than merely abated, each claim against [them] and left only the claims against [the other defendants]," the court's ruling constituted a grant of summary judgment in favor of Chatsworth LP and Blue Ridge HC. *Redding v. Walker*, 225 Ga. App. 653, 654-655 (1) (485 SE2d 252) (1997) (physical precedent only).

It is true that in their brief filed in support of their Motion to Dismiss Improper Parties, Chatsworth LP and Blue Ridge HC cited to OCGA § 9-11-21.[8] But "[t]here is no magic in nomenclature, and we judge pleadings, motions and orders not by their name but by their function and substance, being always mindful to construe such documents in a manner compatible with the best interests of justice." *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 64 (2) (537 SE2d 670) (2000). OCGA § 9-11-21 is

---

[8] OCGA § 9-11-21 provides:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

11

a procedural mechanism for adding or dropping parties by order of the trial court without requiring the dismissal of the entire action. See *Intl. Maintenance Corp. v. Inland Paper Bd. & Packaging*, 256 Ga. App. 752, 755 (2) (569 SE2d 865) (2002) (noting that plaintiff can voluntarily dismiss his or her case without court permission under certain circumstances under OCGA § 9-11-41 (a), but "dismissing fewer than all defendants is considered to be 'dropping' a party and requires the court's permission" under OCGA § 9-11-21); *Young v. Rider*, 208 Ga. App. 147, 148 (1) (430 SE2d 117) (1993) (OCGA § 9-11-21 "provide[s] procedural relief for plaintiffs who sue too many or too few parties, so that misjoinder of parties is not ground for dismissal of an action") (citations and punctuation omitted). A trial court's decision whether to permit the adding or dropping of parties under OCGA § 9-11-21 requires the court to exercise its discretion, *Manning v. Robertson*, 223 Ga. App. 139, 141 (1) (476 SE2d 889) (1996), and the statute is not a device for dismissing the claims of parties on the merits. See *Benedek v. Board of Regents of Univ. System of Ga.*, 332 Ga. App. 573, 575 (1) (b) (774 SE2d 150) (2015) (cautioning that trial court's analysis when considering a motion under OCGA § 9-11-21 should not be "based upon a consideration of the merits of the claim against [those] parties"). In this respect, OCGA § 9-11-21 must be read in pari materia with OCGA § 9-11-56 rather

12

than in a manner that would circumvent the burdens and safeguards afforded by the latter statute when a movant seeks to test the substantive merits of a party's claims.[9] See *Clover Realty Co. v. Todd*, 237 Ga. 821, 822 (229 SE2d 649) (1976) (statutory provision for adding or dropping parties must be read in pari materia with other provisions of Civil Practice Act); *Chan v. W-E. Trading Corp.*, 199 Ga. App. 76, 79 (5) (403 SE2d 840) (1991) (construing OCGA § 9-11-21 in pari materia with several other Civil Practice Act provisions). Accordingly, because the trial court addressed the underlying merits of the case in granting the Chatsworth LP and Blue Ridge HC's

---

[9] See OCGA § 9-11-56 (c) (motion for summary judgment "shall be served at least 30 days before the time fixed for the hearing" and grant of such a motion is appropriate only if record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"), (f) (authorizing continuance to permit additional discovery before ruling on summary judgment motion), (h) (granting right to directly appeal the partial grant of summary judgment); *Hunt v. Thomas*, 296 Ga. App. 505, 506 (1) (675 SE2d 256) (2009) ("[A] party who files a timely written request for oral argument on a motion for summary judgment is absolutely entitled to one under Uniform Superior Court Rule 6.3."); *Cordell v. Bank of North Ga.*, 295 Ga. App. 402, 405 (1) (b) (672 SE2d 429) (2008) (noting that "a motion for summary judgment [must] be served at least 30 days before the time fixed for a hearing" and that "an affidavit relied on in support of a motion for summary judgment must be on file for at least 30 days prior to the hearing") (citations, punctuation, and footnotes omitted).

13

Motion to Dismiss Improper Parties, the court's ruling cannot be properly construed as an order authorizing the dropping of parties under OCGA § 9-11-21.

In sum, we conclude that because the trial court's March 2019 Order included an award of partial summary judgment to Chatsworth LP and Blue Ridge HC, the order was subject to direct appeal pursuant to OCGA § 9-11-56 (h). As such, we have jurisdiction to review all of the trial court's rulings contained in the March 2019 Order challenged by Andrews on appeal. See *Headrick v. Stonepark of Dunwoody Unit Owners Assn.*, 331 Ga. App. 772, 775 (1) (a) (771 SE2d 382) (2015).

2. Andrews contends that the trial court erred in granting Chatsworth LP and Blue Ridge HC's Motion to Dismiss Improper Parties because (a) the court awarded summary judgment to those defendants before Andrews was afforded an opportunity to conduct adequate discovery and (b) the court erroneously construed a statement by Andrews's counsel at the motions hearing as an admission that Chatsworth LP and Blue Ridge HC would be dismissed from the case.

(a) After Chatsworth LP and Blue Ridge HC filed their Motion to Dismiss Improper Parties, Andrews filed a response in which she argued, among other things, that the motion was premature because it went to the underlying merits of the case and she had not yet had an opportunity to conduct adequate discovery on the

14

ownership and management of Chatsworth Health Care Center, including deposing Karschner, the affiant relied upon by the defendants to support their motion. Andrews acknowledged that Blue Ridge HC "unlikely had any involvement in [the decedent's] care considering the dates of incorporation and devolvement," but argued that she was "still entitled to test the veracity of these . . . claims related to the incorporation of [Blue Ridge HC], and the management, ownership, and control of Chatsworth Health Care Center." The trial court subsequently stayed discovery and ruled on the Motion to Dismiss Improper Parties based on the existing evidentiary record.

The trial court erred in ruling on the Motion to Dismiss Improper Parties without first permitting the additional discovery requested by Andrews. As discussed supra in Division 1, the trial court's ruling on the motion constituted an award of summary judgment to Chatsworth LP and Blue Ridge HC, and "in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment." (Citation and punctuation omitted.) *Dixon v. MARTA*, 242 Ga. App. 262, 266 (3) (529 SE2d 398) (2000). Andrews was "entitled to all favorable inferences and reasonable doubts which may arise from a fully developed record," *Shipley v. Handicaps Mobility*

15

*Systems*, 222 Ga. App. 101, 102 (473 SE2d 533) (1996), and to that end, she should have been afforded an opportunity to develop proof giving rise to triable issues of fact regarding the ownership, operation, control, and management of Chatsworth Health Care Center, including an opportunity to depose Karschner, the affiant directly associated with the operations of Chatsworth LP and Blue Ridge HC. See id. at 102-103. Under the circumstances of this case, the trial court prematurely ruled on Chatsworth LP and Blue Ridge HC's motion, and we therefore reverse the trial court's grant of partial summary judgment to those defendants and "direct that any such ruling wait until after [Andrews's] right to discovery is complete." Id. (reversing grant of summary judgment as premature, where plaintiff was not afforded an opportunity to depose key witnesses who provided affidavits in support of defendant's motion). See *Erickson v. Hodges*, 257 Ga. App. 144, 146 (570 SE2d 420) (2002) (vacating summary judgment ruling as premature, where non-movant had not yet been able to depose key witness at time trial court issued its decision).

(b) As a separate basis for granting the Motion to Dismiss Improper Parties, the trial court found that Andrews's counsel made a binding admission in judicio at the motions hearing that Chatsworth LP and Blue Ridge HC would be dismissed from the case. The trial court erred in this regard.

16

"Admissions of fact, made by a party's counsel during a hearing or trial, are regarded as admissions in judicio and are binding on the party." (Citations and punctuation omitted.) *9766, LLC v. Dwarf House*, 331 Ga. App. 287, 291 (4) (a) (771 SE2d 1) (2015). Here, the alleged admission by Andrews's counsel occurred during the following exchange at the hearing conducted to address the various motions filed by the defendants:

> THE COURT: All right. So we have, well, several defense motions, but go ahead.
>
> [DEFENSE COUNSEL]: I think we can save a little time with the improper parties motion. I think we're able to agree — or working to agree on an order for that and just need to finalize the languages. Is that correct? Is that right?
>
> [ANDREWS'S COUNSEL]: That's correct, your Honor. I think we were close on Friday. I haven't really looked at it this afternoon. We had other planned engagements, obviously, but I do believe we are close to getting that one motion sorted out, which would essentially take out two defendants, Blue Ridge Health Care, LLC, and Chatsworth Health Care Limited Partnership. We're just working out the language on getting a consent order to the court for approval on taking that . . . matter out of the court's way.

17

The parties ultimately did not submit a consent order to the court. However, based on the statement of Andrews's counsel, the trial court found that counsel had made an admission that Chatsworth LP and Blue Ridge HC would be dismissed from the case in a consent order, and that based on that binding admission, dismissal of those defendants was appropriate.

The trial court erred in finding that Andrews's counsel made a binding admission regarding the dismissal of Chatsworth LP and Blue Ridge HC. "[A]lleged admissions in judicio may be read in context to determine [their] meaning, "*Meinhardt v. Christianson*, 314 Ga. App. 705, 709 (2) (b) (725 SE2d 828) (2012) (citation omitted), and the hearing transcript reflects that the parties were still in the process of working out the terms of a consent order and *anticipated* that a final agreement could be reached. In other words, the parties clearly contemplated future negotiations to finalize the terms of a consent order dismissing Chatsworth LP and Blue Ridge HC, and the parties were simply expressing their opinion to the trial court that a final agreement could be reached. But expressions of opinion do not constitute admissions in judicio. *9766, LLC*, 331 Ga. App. at 291 (4) (a). Consequently, the trial court erred in finding that Andrews's counsel had made a binding admission that Chatsworth LP and Blue Ridge HC would be dismissed from the case.

18

3. In its March 2019 Order, the trial court found that Blue Ridge Associates' registered office changed from DeKalb County to Dawson County as of February 27, 2018, which was before Andrews filed her complaint, and that venue in DeKalb County therefore could not be founded on the residence of Blue Ridge Associates. On appeal, Andrews contends that the trial court erred in concluding that venue in DeKalb County could not be predicated on Blue Ridge Associates. According to Andrews, Blue Ridge Associates was still a resident of DeKalb County at the time the lawsuit was filed based on when the annual registration document reflecting its change of address was filed with the Office of the Secretary of State of Georgia. We agree with Andrews.

Under Georgia law, in civil proceedings generally, a limited liability company is deemed to reside and is subject to venue in the county where its registered office is maintained. OCGA §§ 14-3-510 (b) (1); 14-11-1108 (b). And "[i]n a tort action, if venue in a particular county is proper as to one joint tortfeasor, it is proper as to the other joint tortfeasors as well." (Citation and punctuation omitted.) *Burchfield v. West Metro Glass Co.*, 340 Ga. App. 324, 326 (797 SE2d 225) (2017). "For purposes of venue and other jurisdictional questions, a person's residence at the time of filing of suit is the determining factor if followed by service within a reasonable time. A

19

change of residence by the defendant after the filing of an action but before trial does not change the proper venue." (Citations and punctuation omitted.) *Viskup v. Viskup*, 291 Ga. 103, 104 (1) (727 SE2d 97) (2012).

Andrews filed her complaint on March 14, 2018, and there is no dispute on appeal that the defendants were served within a reasonable time. Thus, the determinative question for residency and venue purposes is whether Blue Ridge HC's registered office was located in DeKalb County on March 14, 2018. See OCGA §§ 14-3-510 (b) (1); 14-11-1108 (b); *Viskup*, 291 Ga. at 104 (1). The 2018 Annual Registration for Blue Ridge HC, which was filed with the Secretary of State, changed the registered office for the company from an address in DeKalb County to an address in Dawson County. The Annual Registration was signed by Blue Ridge HC's authorized representative on February 27, 2018 and included a statement that the information in the document was "on record as of" that date. However, the date and time stamp on the 2018 Annual Registration listed March 15, 2018, one day after the lawsuit was filed, as the date the Annual Registration was received by the Secretary of State.

20

Relying on OCGA § 14-2-123,[10] the trial court concluded that the date of the Secretary of State's time and date stamp did not control in determining the effective date of the change in location of the registered office, that the effective date of Blue Ridge HC's registered office change was February 27, 2018, and that Blue Ridge HC thus was a resident of Dawson County at the time the lawsuit was filed. The trial court erred in its analysis.

At the outset, we note that Blue Ridge HC is a limited liability company governed by Chapter 11 rather than Chapter 2 of the Georgia Business Code, and thus the applicable statute is OCGA § 14-11-206 rather than OCGA § 14-2-123. See *STL*

---

[10] OCGA § 14-2-123 provides in relevant part:
    (a) Except as provided in subsection (b) of this Code section and subsection (c) of Code Section 14-2-124, a document accepted for filing is effective:
        (1) At the time of filing on the date it is filed, as evidenced by the Secretary of State's date and time endorsement on the original document; or
        (2) At the time specified in the document as its effective time on the date it is filed.
    (b) A document may specify a delayed effective time and date, and if it does so the document shall become effective at the time and date specified. If a delayed effective date but no time is specified, the document shall become effective at the close of business on that date. A delayed effective date for a document may not be later than the ninetieth day after the date on which it is filed.

21

*Mgmt. Consultants v. Manhattan Leasing Enterprises*, 333 Ga. App. 309, 311 (775

SE2d 758) (2015). OCGA § 14-11-206 provides in relevant part:

> (e) Except as provided in subsection (d) of this Code section,[11] a document accepted for filing is effective:
>
> (1) At the time of filing on the date it is filed, as evidenced by the Secretary of State's date and time endorsement on the original document; or
>
> (2) At the time specified in the document as its effective time on the date it is filed.
>
> (f) A document may specify a delayed effective time and date, and, if it does so, the document shall become effective at the time and date specified. If a delayed effective date but no effective time is specified, the document shall become effective at the close of business on that date. A delayed effective date for a document may not be later than the ninetieth day after the date on which it is filed.

In construing OCGA § 14-11-206, we are mindful that "[t]he fundamental rules

of statutory construction require us to construe the statute according to its own terms,

---

[11] Subsection (d) of OCGA § 14-11-206 addresses the circumstance where the Secretary of State determines that a "document delivered for filing does not conform to the filing provisions of this chapter at the time such document is delivered to the Secretary of State." Subsection (d) does not apply in this case.

22

to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citation and punctuation omitted.) *La Fontaine v. Signature Research*, 305 Ga. 107, 108 (823 SE2d 791) (2019). "[T]he search for legislative intent must begin with the words of the statute, and if those words are clear and unambiguous, the search also must end there." *Northeast Atlanta Bonding Co. v. State*, 308 Ga. App. 573, 577-578 (1) (707 SE2d 921) (2011). See *Opensided MRI of Atlanta v. Chandler*, 287 Ga. 406, 407 (696 SE2d 640) (2010).

By its clear and unambiguous language, OCGA § 14-2-206 (e) (1) provides that a document filed with the Secretary of State by a limited liability company becomes effective no sooner than the date it was filed with the Secretary, which is shown by the Secretary's date and time endorsement on the original document. Here, because the Secretary of State's date and time endorsement on Blue Ridge HC's 2018 Annual Registration reflects that the document was filed with the Secretary on March 15, 2018, that was the effective date of the document. See OCGA § 14-2-206 (e) (1). The fact that the 2018 Annual Registration contained a signature date of February 27, 2018 and specified that the information was "on record as of" that date does not change this result because nothing in OCGA § 14-2-206 permits a party to specify an effective date for a filed document that *predates* the date of filing with the Secretary

23

of State. Rather, OCGA § 14-2-206 (e) (2) permits a party to specify a different *time* that the document will take effect "on the date it is filed," and OCGA § 14-2-206 (f) permits a party to select a "*delayed* effective time and date." We must presume that in drawing these distinctions, "the General Assembly meant what it said and said what it meant,"[12] and "that the legislature did not intend to enact meaningless language." (Citation and punctuation omitted.) *Pandora Franchising v. Kingdom Retail Group*, 299 Ga. 723, 728 (1) (b) (791 SE2d 786) (2016). Consequently, Blue Ridge Associates's change in registered office (and thus change in residency) from DeKalb County to Dawson County did not become effective until March 15, 2018, after Andrews's lawsuit was filed.

For these reasons, the trial court erred in finding that Blue Ridge Associates was not a resident of DeKalb County at the time of the filing of the lawsuit and in concluding that venue could not be predicated on the residence of that company.[13] See

---

[12] (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

[13] The trial court also found that the other company whose registered office could have given rise to a DeKalb County venue – Blue Ridge HC – had been dismissed as an improper party and thus could not provide a basis for venue. However, as discussed supra in Division 2, the trial court erred in dismissing Blue Ridge HC as an improper party.

24

*Viskup*, 291 Ga. at 104 (1) (venue determined based on party's residence at time suit is filed, even if residence changes later in the litigation).

4. Andrews argues that the trial court erred in transferring the case to Whitfield County based on the doctrine of forum non conveniens because the court did not properly consider and weigh all of the relevant statutory factors. Among other things, Andrews contends that the trial court's analysis was flawed because the court wrongly concluded that the only connection to DeKalb County was the location of some of the counsel.

Georgia's doctrine of forum non conveniens is codified in OCGA § 9-10-31.1. Under that statute, if a Georgia court "finds that in the interest of justice and for the convenience of the parties and witnesses a claim or action would be more properly heard . . . in a different county of proper venue within this state, the court shall decline to adjudicate the matter under the doctrine of forum non conveniens," and "the venue shall be transferred to the appropriate county." OCGA § 9-10-31.1 (a).

> When a trial court considers whether to grant such a motion, it must give consideration to the factors that appear in OCGA § 9-10-31.1(a): (1) Relative ease of access to sources of proof; (2) Availability and cost of compulsory process for attendance of unwilling witnesses; (3) Possibility of viewing of the premises; (4) Unnecessary expense or trouble to the defendant not necessary to the plaintiff's own right to

25

pursue his or her remedy; (5) Administrative difficulties for the forum courts; (6) Existence of local interests in deciding the case locally; and (7) The traditional deference given to a plaintiff's choice of forum. The application of the statutory standard to the peculiar circumstances of a particular case is a matter committed to the sound discretion of the trial court, and we review the trial court's decision for abuse of discretion.

(Citations and punctuation omitted.) *Woodard Events v. Coffee House Indus.*, 341 Ga. App. 526, 527 (801 SE2d 322) (2017).

In conducting its forum non convenience analysis, the trial court found, among other things, that "[t]he only connection between these cases and DeKalb County is the location of some of the counsel involved." The trial court later pointed out that it had "dismissed one of the two Defendants which formed the basis for fixing venue in DeKalb County, Blue Ridge HC, and found that the other such Defendant, Blue Ridge [Associates], was not a resident of DeKalb County at the time this action was filed." However, as noted supra in Divisions 2 and 3, those determinations regarding Blue Ridge HC and Blue Ridge Associates were in error. Because the errors previously discussed in this opinion affected the trial court's forum non conveniens analysis, we vacate the trial court's grant of the defendants' motions to transfer and remand for reconsideration of the statutory factors consistent with this opinion. In so

26

doing, we express no opinion as to the ultimately conclusion reached by the trial court on remand when it exercises its discretion in balancing and weighing the various factors under OCGA § 9-10-31.1 (a).

*Judgment reversed in part, vacated in part and case remanded with direction. Mercier and Brown, JJ., concur.*